UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HSBC Bank USA, National Association, as Indenture Trustee for People's Choice Home Loan, Securities Trust Series 2005-3<br><br>Plaintiff/Counter-Defendant<br><br>v.<br><br>Ruth Helen Davis,<br><br>Defendant/Counter-Plaintiff | Case No. 1:12-cv-06801<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

In this foreclosure action, *pro se* Defendant/Counter-Plaintiff Ruth Helen Davis ("Davis") has raised various affirmative defenses and brought multiple counterclaims against Plaintiff/Counter-Defendant HSBC Bank USA, National Association, as Indenture Trustee for People's Choice Home Loan, Securities Trust Series 2005-3 ("HSBC"). [115] at 1-6 (incorporating counterclaims originally alleged in [77]).

HSBC has moved for summary judgment on all of Davis' counterclaims and affirmative defenses. Davis, meanwhile, has moved to strike the affidavit relied upon by HSBC in its motion for summary judgment. For the reasons discussed below, HSBC's motion [119] is granted, and Davis' motion [128] is denied.

**I.    Background[1]**

On March 24, 2005, People's Choice Home Loan, Inc. ("People's Choice") lent Davis $161,500.00, and Davis executed a note (the "Note") reflecting that same amount in favor of People's Choice.  [122] at 2.  That same day, Davis executed a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as Nominee for People's Choice, to secure repayment of the loan and the Note.  *Id.*  The property encumbered by the Mortgage is located at 2202 East 70th Place #204, Chicago, Illinois 60649.  *Id.*  The Mortgage was recorded with the Cook County Recorder of Deeds on April 11, 2005.  *Id.*

Pursuant to the Mortgage and related documentation, Davis agreed to: (1) keep any "improvements now existing or hereafter erected on the property" insured against loss by fire and other hazards, [121] at 23; (2) pay into escrow amounts due for taxes and insurance premiums, *id.* at 22-23; and (3) furnish evidence of insurance upon request.  *Id.* at 38.  Davis also agreed that if she did not provide evidence of insurance upon request, the operative lender could independently

---

[1] Plaintiff has failed to file an enumerated response to HSBC's statement of facts, as required by Local Rule 56.1.  *See* [132] at 1-12 (Plaintiff's self-styled response to HSBC's statement of facts, a four-page narrative replete with legal conclusions and inapposite observations).  Accordingly, HSBC's Local Rule 56.1 statements are deemed admitted, and those same statements [122] form the basis of this section.  *See McNeil v. United States,* 508 U.S. 106, 113 (1993) (The Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.,* 423 Fed. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.,* 371 Fed. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion," even though the plaintiff was *pro se*) (citations omitted); N.D. Ill. L.R. 56.1(b)(3)(B) ("in the case of any disagreement" with the movant's Local Rule 56.1(a)(3) statement, the non-movant's response must contain "specific references to the affidavits, parts of the record, and other supporting materials relied upon").

2

acquire insurance and charge her account. [122] at 4; [121] at 38. HSBC acquired the Note from People's Choice on June 1, 2005. [122] at 4.

### A. The Escrow

Litton Loan Servicing LP ("Litton") originally serviced the loan for HSBC. *Id.* at 5. During that time, Litton maintained an escrow account, into which Davis paid amounts required for real estate taxes and from which real estate taxes were paid. *Id.* at 5.

On April 18, 2011, Litton sent Davis an annual escrow statement, which explained that on June 1, 2011, her monthly escrow payment would increase to $318.84. *Id.* at 5. Accordingly, Davis' monthly payment (including the relevant principal, interest and escrow) would become $1,365.26. *Id.* at 5-6.

On October 10, 2011, Litton made real estate tax payments in the aggregate amount of $1,270.37. *Id.* at 6. Following that payment, the balance on Davis' escrow account was negative $364.78. *Id.*

On October 18, 2011, Litton advised Davis that the amount required to bring her loan account current was $2,302.81. *Id.* This total reflected the amount held in a suspense account for Davis, two monthly payments (including escrow) of $1,365.26, and three late charges of $52.32 each. *Id.* Davis paid this full amount on October 25, 2011. *Id.*

On November 1, 2011, servicing of the loan transferred from Litton to Ocwen Loan Servicing, LLC ("OLS"). *Id.* at 5. Neither Litton nor OLS nor HSBC ever waived Davis' escrow obligations. *Id.* at 7.

B.    **The Temporary Insurance**

On November 13, 2011, OLS sent a notice to Davis, requesting that she furnish evidence of insurance because her prior policy was expiring. *Id.* at 8. Davis did not respond. *Id.*

On December 18, 2011, OLS mailed a second notice to Davis, advising her that: (1) it had "secured temporary coverage" over her property for the period from November 1, 2011 through December 31, 2011, [121] at 80; and (2) this temporary policy would be "cancelled at any time" at no cost to her upon receipt of proof of insurance. *Id.* at 81. Davis also failed to respond to this message. [122] at 8.

On January 21, 2012, OLS mailed a third notice to Davis, informing her that she would be charged for the previously-mentioned temporary insurance within 30 days if she did not produce proof of insurance. [121] at 85. Davis did not respond to this letter either. [122] at 9.

On April 5, 2012, OLS sent Davis an annual escrow statement, which reflected a payment of $1,605 for lender-placed insurance. [121] at 94. This escrow statement also requested that Davis send a copy of the declaration page from her current insurance policy, if she thought the information contained in the escrow statement was incorrect. *Id.* at 94-95.

On April 27, 2012, Davis finally responded to OLS and sent along her proof of insurance. [122] at 9. On May 4, 2012, OLS accordingly inactivated the temporary insurance policy. *Id.* At that point OLS had not collected any funds from Davis

4

related to the temporary insurance policy, such that no refunds were due. *Id*. at 9-10.

## C. The Default

Beginning in approximately February 2012, Davis began making payments that were lower than required under the Mortgage. *Id*. at 7. OLS held these lower payments in Davis' suspense account until the total in the suspense account equaled a regular payment, at which time OLS applied the funds to the loan. *Id*.

On May 4, 2012, HSBC, though OLS, sent Davis a Notice of Default. *Id*. at 7. The Notice of Default advised Davis that she needed to pay the entire amount due ($2,937.67) by June 4, 2012, or HSBC would accelerate payment under the Mortgage. *Id*. at 7-8.

In response to the Notice of Default, Davis sent OLS a personal check in the amount of $1,046.42. *Id*. at 8. On May 24, 2012, OLS returned this check to Davis, explaining that the check was returned because it did not satisfy the defaulted amount. *Id*. Davis sent in another check for less than the defaulted amount, and OLS returned this check on July 30, 2012, with the same explanation. *Id*. HSBC then initiated this foreclosure action in August of 2012. [1] at 1-5.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that

5

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

### III. Analysis

As a preliminary matter, the Court declines to strike the declaration[2] of Kevin Flannigan [121], Senior Loan Officer at OLS. In broad strokes, Mr. Flannigan describes OLS and HSBC's business practices, their relationship with Davis, and the documentary evidence commemorating the same. *Id.* at 1-10. Mr. Flannigan's declaration comports with the strictures of the Federal Rules, as it was made on personal knowledge, sets out facts that would be admissible in evidence, and shows that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

Mr. Flannigan's declaration also authenticates the documents relied upon by HSBC, and establishes that these documents are "business records" within the hearsay exception provided by Federal Rule of Evidence 803(6). Among other things, the declaration reflects that, based upon Mr. Flannigan's "personal knowledge," the attached documents are "made and maintained in the ordinary

---

[2] Though Mr. Flannigan's statement purports to be an affidavit, it is neither witnessed nor sealed. Instead, Mr. Flannigan's statement is a declaration within the meaning of 28 U.S.C. § 1746. *See* [121] at 10.

course of OLS's business. . . . around the time of [each] transaction or event" reflected in the particular document. [121] at 1-2; *see also Wells Fargo Bank, N.A. v. Morgan,* No. 12-cv-4797, 2013 WL 3670243, at *2-3 (N.D. Ill. July 12, 2013) (finding an affidavit regarding loan servicing records satisfied the requirements of the business records exception).

The Court now turns, with the aid of Mr. Flannigan's declaration, to Davis' counterclaims, which sound in breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA") (Count IV).

### A. Breach of Contract

The required elements for a breach of express contract claim under Illinois law are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) an injury. *See VanDerMolen v. Wash. Mut. Fin., Inc.,* 835 N.E.2d 61, 69 (Ill. App. Ct. 2005). HSBC contends that the undisputed material facts demonstrate that Davis cannot establish either breach or injury. The Court agrees.

The only damages identified by Davis (as the Court can best surmise from her *pro se* pleadings) flow from the temporary insurance policy discussed by the parties in early 2012. It is undisputed, however, that: (1) Davis was never actually charged for the temporary insurance policy; and (2) Davis never incurred ancillary

7

costs related to that same policy. *See supra* at 3-4. Davis accordingly cannot demonstrate that she suffered the requisite injury.

Davis has also failed to adduce any evidence from which a reasonable juror could conclude that HSBC breached its contractual obligations. She claims that HSBC breached the Mortgage by: (1) implementing the temporary insurance policy; and (2) charging her an inappropriate rate for the temporary insurance policy. Both allegations are belied by the record. It is undisputed that OLS secured the temporary insurance only after Davis failed to furnish the requisite proof of insurance, and OLS then cancelled the temporary insurance after Davis produced the necessary proof, all at no cost to Davis. *See supra* at 3-4. In short, OLS and HSBC acted in accordance with HSBC's rights under the Mortgage.

Because Davis cannot adduce evidence of either injury or breach, her breach of contract counterclaim fails as a matter of law.

### B. Implied Covenant of Good Faith and Fair Dealing

Davis' independent claim for breach of the implied covenant of good faith and fair dealing does not apply in this case. Under Illinois law, every contract "contains an implied covenant of good faith and fair dealing between the parties, but the implied covenant is not an independent source of duties; rather, it guides the interpretation of the terms of the contract." *LSREF3 Sapphire Trust 2014 v. Barkston Properties, LLC*, No. 14-cv-7968, 2016 WL 302150, at \*3 (N.D. Ill. Jan. 25, 2016); *see also Fifth Third Bank (Chicago) v. Stocks*, 720 F. Supp. 2d 1008, 1012

8

(N.D. Ill. 2010) ("an implied covenant of good faith cannot overrule or modify the express terms of a contract").

In fact, an "independent cause of action for breach of that implied covenant does not exist except in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued a policyholder." *D'Attomo v. Baumbeck*, 36 N.E.3d 892, 911-12 (Ill. App. Ct. 2015). Davis' claim is far afield of this narrow exception, and HSBC's motion for summary judgment is accordingly granted as to Count II.

### C. Unjust Enrichment

Under Illinois law, to sustain a claim of unjust enrichment, the plaintiff must show that the defendant has "unjustly retained a benefit to its detriment, and that the retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Devco v. T10 Meltel, LLC*, No. 15-cv-3558, 2017 WL 750603, at *2 (N.D. Ill. Feb. 27, 2017) (quotation omitted). The "theory of unjust enrichment is an equitable remedy based upon a contract implied in law." *Toulon v. Cont'l Cas. Co.*, No. 15-cv-138, 2015 WL 4932255, at *4 (N.D. Ill. Aug. 18, 2015) (quotation omitted). As such, when "two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (quotation omitted).

In "determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions

9

related to the claim." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004). Alternatively phrased, "a plaintiff cannot acknowledge throughout that there is an express contract, as the plaintiff does here, and still claim damages for unjust enrichment." *Devco*, 2017 WL 750603, at *5.

Davis' counterclaim for unjust enrichment fails to clear this fundamental hurdle. Indeed, her claim for unjust enrichment concerns "inflated insurance premiums related to force-placed insurance policies"—the very same temporary insurance policies contemplated by the Mortgage and related documents. *See, e.g.*, [121] at 38 ("Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense . . . .").

Davis has also failed to identify any "unjustly retained benefit" in this case. Here again, it is undisputed that: (1) Davis was never actually charged for the temporary insurance policy; and (2) Davis never incurred any costs related to that same policy. *See supra* at 3-4.

Because Davis' claim falls within the parties' express contract and she cannot identify the requisite improper benefit, HSBC is entitled to summary judgment on Count III.

**D.    The ICFA**

A plaintiff alleging a claim under the ICFA must establish that: (1) the defendant engaged in a deceptive act or unfair practice; (2) the defendant intended for plaintiff to rely on this same deceptive act or unfair practice; (3) the deceptive act or unfair practice occurred in a course of conduct involving trade or commerce;

10

(4) the plaintiff sustained actual damages; and (5) the damages were proximately caused by the defendant's deceptive act or unfair practice. *See Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016).

As a preliminary matter, Davis has once again failed to adduce any evidence of the requisite "actual damages." *See supra* at 7; *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) ("In a private ICFA action, the element of actual damages requires that the plaintiff suffer actual pecuniary loss.") (quotation omitted).

Davis' ICFA claim also fails insofar as she has not adduced any material evidence from which a reasonable juror could conclude that HSBC engaged in the requisite deceptive act or unfair practice. Under the undisputed facts, HSBC and OLS comported with the language of the governing contracts. *See supra* at 8.

The Court's analysis remains unchanged even assuming *arguendo* that a breach occurred. Indeed, a "breach of contractual promise, without more, is not actionable under the [Illinois] Consumer Fraud Act." *Langendorf v. Conseco Senior Health Ins. Co.*, 590 F. Supp. 2d 1020, 1022 (N.D. Ill. 2008) (quoting *Avery v. State Farm Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005)). In *Avery* the Illinois Supreme Court explained:

> What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or

11

> to supplement every breach of contract claim with a redundant remedy. We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract

*Avery*, 835 N.E.2d at 844.

Davis' counterclaim under the ICFA is untenable, in light of the undisputed record and *Avery*.

### E. Plaintiff's Affirmative Defenses

HSBC has also moved for summary judgment on each of Davis' affirmative defenses, suggesting that they are unsupported by the record, legally deficient, or both. The Court will address each in turn.

#### 1. Putative Defects With The Note and Mortgage

Davis' first two affirmative defenses read, in their entirety: "1. Mortgage is defective. 2. Mortgage Note is defective." [115] at 3. HSBC argues that summary judgment is appropriate on these defenses, insofar as the "Mortgage and Note, endorsed in blank, show no defects on their face." [120] at 12. The Court agrees. Based on the undisputed record, *see supra* at 2, the Mortgage and Note are not defective, such that summary judgment is appropriate on Davis' first two affirmative defenses.

The Court also notes that these assertions do not qualify as affirmative defenses. An affirmative defense "limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case." *Tober v. Graco Children's Prods., Inc.*, 431 F.3d 572, 579 n. 9 (7th Cir. 2005). Phrased another way, "an affirmative

12

defense is a 'defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true.'" *Bell v. Taylor*, 827 F.3d 699, 704-05 (7th Cir. 2016) (quoting *Defense*, *Black's Law Dictionary* (10th ed. 2014)).

### 2. Affidavit

Davis' third and fourth affirmative defenses provide:

> 3. Affidavit of Debt submitted by Ocwen Loan Servicing is defective. Debt Affidavit claims monthly payment of $1514.28. Plaintiffs' claim monthly payments did not increase from $1365.26
>
> 4. Affiant, Harrison Whittaker, who submitted the Affidavit of Debt from Ocwen (his testimony has been discredited by judges in several courts) as the court "having no confidence in his sufficient knowledge about how and when the records were made or the regular business practices . . . ."

[115] at 3.

Here again, summary judgment is appropriate, as these contentions are not affirmative defenses—they do not limit or excuse Davis' "liability even if the plaintiff establishes a *prima facie* case." *Tober*, 431 F.3d at 579 n. 9. Of course, Davis has had ample opportunity to challenge HSBC's affidavits through other procedural avenues (and indeed she has invoked such measures, in her parallel motion to strike the affidavit of Kevin Flannigan [128], discussed *supra*).

### 3. Chain of Transfer

Davis' fifth affirmative defense reads: "Ocwen Loan Servicing did not have proper chain of transfer through servicing to service the mortgage note." [115] at 3.

13

HSBC simultaneously contests this assertion and notes that it is legally irrelevant: whether Litton effectivity transferred the servicing of the loan to OLS does not impact Davis' obligations vis-à-vis HSBC under the Note and the Mortgage. HSBC's position accurately reflects the governing contractual documents, *see supra* at 2-5, and summary judgment is accordingly granted on Davis' fifth affirmative defense.

### 4. Estoppel

Davis' sixth affirmative defense contends as follows: "Ocwen Loan Servicing committed Estoppel through returning Defendant's checks for principle and interest after initially accepting them when it was clearly written on them that they were for principle and interest." [115] at 3.

This assertion flies in the face of the Mortgage's plain language, which explicitly permitted HSBC to: (1) accept any payment or partial payment insufficient to bring the loan current, without waiving any rights under the Mortgage or prejudicing HSBC's rights to refuse such partial payments in the future; and (2) hold a payment in suspense because it was insufficient to make the loan current. [122] at 2-3; [121] at 21. In light of the undisputed record, HSBC is entitled to summary judgment on this affirmative defense.

### 5. Taxes

Davis' seventh affirmative defense alleges, *in toto*: "Ocwen Loan Servicing did not pay taxes." [115] at 3. This assertion is underdeveloped and inconsistent with

14

the record, *see supra* at 2-5, such that HSBC is entitled to summary judgment on the same.

### 6. Insurance

Davis' eighth affirmative defense contends: "Ocwen Loan Servicing attached Forced-Placed insurance on property that already had insurance. Defendant sent them the Declaration Page which was not acknowledged." [115] at 3. Here again, the undisputed record reflects that OLS secured the temporary insurance only after Davis failed to furnish proof of insurance, and OLS then cancelled the temporary insurance after Davis produced the requisite proof, at no cost to Davis. *See supra* at 3-4. These actions were entirely consistent with the parties' contractual obligations, and HSBC is entitled to summary judgment on this putative affirmative defense.

### 7. Language

Davis' ninth putative affirmative defense claims that OLS "had customer service reps that spoke little or very limited English transacting their business." [115] at 3. This irrelevant assertion is not a legally sufficient affirmative defense. *See Tober*, 431 F.3d at 579 n. 9. HSBC is granted summary judgment on Davis' ninth affirmative defense.

### 8. Escrow

Davis' tenth affirmative defense contends: "Ocwen Loan Servicing collected escrow when previous service company had restored account back to initial principle and interest payments." [115] at 3. This claim is also unsupported by the record. In fact, neither Litton nor OLS nor HSBC ever waived Davis' escrow obligations,

and Davis actually paid amounts owed as escrow to both OLS and Litton. *See supra* at 2-5. HSBC is entitled to summary judgment on this assertion.

### 9. OLS and HSBC

Davis' eleventh affirmative defense suggests that "HSBC and other plaintiffs are responsible and accountable for the actions of Ocwen." [115] at 3. This legal conclusion is not an affirmative defense, as it would not serve to "defeat the plaintiff's claim, even if" it were true. *Bell*, 827 F.3d at 705 (internal quotation omitted). HSBC is entitled to summary judgment on this issue.

### 10. Reservation of Right

In her twelfth affirmative defense, Davis purportedly "reserves the right to add additional Affirmative Defenses." [115] at 3. This "is not a proper affirmative defense. If at some later point in the litigation" Davis comes to believe "that the addition of another affirmative defense is warranted," she may seek leave to amend her pleadings "pursuant to Rule 15(a); such a request will be judged by the appropriate standards." *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 907 (N.D. Ill. 2006).

### 11. Misleading Statements

In her thirteenth and fourteenth affirmative defenses, Davis alternatively claims that "Plaintiffs' have shown a history of making statements to Defendant that were not true," and recounts various interactions between herself and HSBC's counsel before status hearings in this case. [115] at 3. These contentions do not

constitute appropriate affirmative defenses, and HSBC is entitled to summary judgment on both.

**IV.     Conclusion**

For the foregoing reasons, HSBC's motion for summary judgment [119] is granted, and Davis' motion to strike [128] is denied.  The case remains set for a status hearing for 4/13/2017, at 9:45 a.m., in Courtroom 1725.  The parties should come prepared to discuss final resolution of the case by dispositive motion or otherwise.

Date: April 3, 2017                                        Entered:

_____
John Robert Blakey
United States District Judge